# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 23, 2019

LETTER TO THE PARTIES

RE:     *Lakisha S. v. Commissioner, Social Security Administration*;
        Civil No. SAG-18-1708

Dear Plaintiff and Counsel:

On June 11, 2018, Plaintiff Lakisha S., who appears *pro se*, petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. ECF 1. I have considered both parties' motions for summary judgment.[1] ECF 16, 17. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny the SSA's motion and remand the case to the SSA for further evaluation pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff protectively filed her claims for benefits on October 28, 2014, alleging a disability onset date of August 12, 2013.[2] Tr. 222-34. Her claims were denied initially and on reconsideration. Tr. 132-36, 137-40. A hearing, at which Plaintiff was represented by counsel, was held on February 3, 2017, before an Administrative Law Judge ("ALJ"). Tr. 30-60. Following that hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 13-23. The Appeals Council denied Plaintiff's request for review, Tr. 1-5, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Plaintiff suffered from the severe impairments of "left knee major joint, depression, and anxiety." Tr. 15. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift, carry, push, pull twenty pounds occasionally, ten pounds frequently, sit for six hours in a workday, stand/walk for six hours in an eight hour workday, with standing and walking, this individual would have the option to alternate to sitting for up to fifteen minutes after every two hours of either standing or walking,

---

[1] After the SSA filed its motion, the Clerk's Office sent a Rule 12/56 letter to Plaintiff, advising her of the potential consequences of failing to oppose the dispositive motion. ECF 18. Plaintiff did not file a response.

[2] Plaintiff subsequently amended her date of onset to January 1, 2015. Tr. 243.

> assuming they'd remain on task in either the standing or walking postural
> positions, this individual could frequently operate left foot controls, this
> individual could never climb ladders, ropes, scaffolds, never crawl, occasional
> ramps and stairs, occasionally balance, stoop, kneel, crouch, this individual would
> never work at unprotected heights or around moving mechanical parts such as
> machinery on a factory floor or on earth moving equipment, this individual could
> perform simple, routine tasks, make simple, work-related decisions, have
> occasional interactions with supervisors, co-workers, and the general public, any
> time off task would be accommodated by normal breaks.

Tr. 17. After considering the testimony of a vocational expert ("VE"), the ALJ determined that
Plaintiff was unable to perform any past relevant work, Tr. 21, but could perform other jobs
existing in significant numbers in the national economy, Tr. 22-23. Accordingly, the ALJ
concluded that Plaintiff was not disabled. Tr. 23.

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*,
386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review
of a *pro se* action challenging an adverse administrative decision, including: (1) examining
whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical
findings for compliance with the law, and (3) determining from the evidentiary record whether
substantial evidence supports the ALJ's findings).

The ALJ proceeded in accordance with applicable law at the first two steps of the
sequential evaluation. The ALJ ruled in Plaintiff's favor at step one, and determined that she had
not engaged in substantial gainful activity since her application date. Tr. 15; *see* 20 C.F.R. §
416.920(a)(4)(i). At step two, the ALJ then considered the severity of each of the impairments
that Plaintiff claimed prevented her from working, finding each impairment to be severe. Tr. 15;
*see* 20 C.F.R. § 416.920(a)(4)(ii).

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically
equal the criteria of any listings. Tr. 16-17. In particular, the ALJ identified and considered
Listings 1.00 (musculoskeletal system), 12.04 (depressive, bipolar, and related disorders), and
12.06 (anxiety and obsessive-compulsive disorders). With respect to the musculoskeletal
system, the ALJ explained that Plaintiff's impairments were insufficient to meet the
requirements of any listing. Tr. 16. With respect to the two mental health listings, the ALJ
engaged in the special technique for evaluation of mental impairments, but found no more than a
moderate limitation in each of the four relevant functional areas. Tr. 16-17. The ALJ employs
the "special technique" to rate a claimant's degree of limitation in each functional area, based on
the extent to which the claimant's impairment "interferes with [the claimant's] ability to function
independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.920a(c)(2).
The ALJ uses a five-point scale to rate a claimant's degree of limitation in the four areas: none,
mild, moderate, marked, or extreme. *Id.* § 416.920a(c)(4). In order to satisfy the "paragraph B
criteria," a claimant must exhibit either "marked" limitations in two of the four areas, or
"extreme" limitation in one of the four areas. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §

12.00(A)(2)(b). Here, with no findings of marked limitation in any area, the ALJ concluded that Plaintiff's impairments did not satisfy the "paragraph B criteria." Tr. 16-17. The ALJ also found that Plaintiff did not meet the "paragraph C criteria" of the mental health listings, which require "serious and persistent" disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment. *Id.* § 12.00 (G). I have carefully reviewed the record, and I agree that no listings are met in this case.

The ALJ continued with the sequential evaluation and considered, in assessing Plaintiff's RFC, the extent to which her impairments limited her ability to work. Tr. 17-21. In considering Plaintiff's RFC, the ALJ summarized Plaintiff's subjective complaints from her hearing testimony. Tr. 18. The ALJ also reviewed Plaintiff's examination and treatment records, and assigned weight to the opinions of various State agency consultants, treating physicians, and third-party function reports. Tr. 18-21.

The fatal flaw in the ALJ's reasoning lies in the dictates of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). In that case, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Id.* at 638. That functional area of concentration, persistence, or pace "refers to the abilit[y] to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(3) (2018). Social Security regulations do not define marked limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however offer little guidance on the meaning of "moderate" limitations in the area of concentration, persistence, or pace.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

Here, the ALJ found that Plaintiff had moderate difficulties maintaining concentration, persistence, or pace. Tr. 16. The ALJ's analysis stated:

> With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitations. In this the claimant alleged in counseling she has, "been crying a lot. I just lost my job. I feel like I can't handle things." The claimant reported decreased concentration. However, it appears from the record the significant changes in work activity started after a fall at work at were related to physical impairment [sic]. The record shows the claimant is able to live independently with roommates and her children and the claimant is able to attend treatment and follow a treatment regimen independently. There is history of conservative mental health treatment with no inpatient hospitalizations, I find the record as a whole indicates less than marked limitations.

Tr. 16-17 (internal citations omitted). In explaining how he arrived at Plaintiff's RFC, the ALJ failed to mention or discuss the opinion of Dr. Adams, Plaintiff's treating physician, regarding Plaintiff's limited ability to concentrate, persist, or maintain pace. *See* Tr. 614-15 (opining that Plaintiff had marked or severe limitations in, among other areas, the abilities to "maintain attention and concentration for extended periods of time," "sustain an ordinary routine without special supervision," "complete a normal workday without interruptions," and "perform at a consistent pace with a standard number and length of breaks."). Although the ALJ acknowledged that Dr. Adams opined that Plaintiff was severely restricted, and that Dr. Adams noted Plaintiff's symptoms had "worsened drastically in the past year," the ALJ assigned only "limited weight" to his opinion. Tr. 21 (quoting Tr. 616). For support, the ALJ noted that Plaintiff "has strong activities of daily living, drives, and lives with many housemates." *Id.* However, the ALJ did not specify Plaintiff's activities of daily living and did not explain how living with housemates mitigated Plaintiff's mental impairments, especially considering Plaintiff's hearing testimony that she often spends the day in bed and does not participate in the household chores. Tr. 52-55.

The restriction to "simple, routine tasks" is directly analogous to the limitations deemed insufficient in *Mascio*. *Mascio*, 780 F.3d at 638 (quoting *Winschel*, 631 F.3d at 1180) (finding "simple, routine tasks or unskilled work" to be insufficient to address a claimant's moderate limitations in concentration, persistence, or pace). In the absence of any additional limitation to accommodate Plaintiff's moderate difficulties maintaining concentration, persistence, or pace, *Mascio* requires that the ALJ explain why no such limitation is required. *Mascio*, 780 F.3d at 638. The ALJ has not provided such an explanation here.

Additionally, the ALJ's assessment of Plaintiff's physical RFC is flawed. The ALJ concluded that Plaintiff could stand or walk up to six hours in an eight-hour workday. Tr. 17. However, the ALJ gave "significant weight" to the opinions of State agency consultants, Drs. Goo and Rudin, who limited Plaintiff to up to two hours of standing or walking in an eight-hour workday. Tr. 20, 84, 113. The ALJ also gave "significant weight" to the opinion of Plaintiff's treating physician, Dr. Sealy, regarding her physical RFC. Tr. 20. While Dr. Sealy referred to Plaintiff's knee prognosis as "fair," she limited Plaintiff to standing for no more than one hour, and walking for no more than one hour, in an eight-hour workday. Tr. 611. The ALJ stated that Dr. Sealy's opinions were "largely reflected" in his RFC assessment, and that Plaintiff's

"[s]tanding and walking limitations were sufficiently addressed with a sit/stand option." Tr. 20. The sit/stand option in the RFC assessment only allowed sitting for up to fifteen minutes after every two hours of standing or walking, Tr. 17, and therefore the total amount of standing and walking would far exceed the capacities recommended by the medical sources.

In light of the ALJ's inadequate RFC assessment, I need not address whether the remainder of the ALJ's analysis, at steps four and five, complied with the relevant legal standards. In ordering remand for further consideration by the SSA, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order will issue.

Sincerely yours,

/s/
Stephanie A. Gallagher
United States District Judge